STATE v. SALINAS

[366 N.C. 119 (2012)]

STATE OF NORTH CAROLINA v. JOSE GUADALUPE SALINAS

No. 401A11

(Filed 14 June 2012)

**Motor Vehicles— driving while impaired—reasonable suspicion—sufficiency of findings of fact**

The superior court did not apply the correct legal standard and failed to make sufficient findings of fact to allow a reviewing court to apply the correct legal standard in a driving while impaired case. The case was remanded to the superior court to reconsider the evidence pursuant to the reasonable suspicion standard. On remand, when ruling upon a motion to suppress in a hearing held pursuant to N.C.G.S. § 15A-977, the trial court may not rely upon the allegations contained in defendant's affidavit when making findings of fact since the affidavit has a procedural rather than an evidentiary function.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 214 N.C. App. 408, 715 S.E.2d 262 (2011), reversing an order granting defendant's pretrial motion to suppress entered on 29 September 2010 by Judge Patrice A. Hinnant in Superior Court, Rockingham County, and remanding to the trial court for entry of a new suppression order. Heard in the Supreme Court on 13 March 2012.

*Roy Cooper, Attorney General, by Jess D. Mekeel, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellee.*

JACKSON, Justice.

After defendant appealed his district court conviction for driving while impaired, the superior court granted defendant's motion to suppress based upon its conclusion that there was not probable cause to stop defendant's vehicle because of the contradictory testimony of the arresting officers and the allegations contained in defendant's affidavit. In this appeal, we consider whether the superior court applied the correct legal standard and made sufficient findings of fact regarding the testimony presented during the hearing. Because we hold that the superior court did not apply the correct legal standard and failed to make findings of fact sufficient to allow a reviewing

court to apply the correct legal standard, we modify and affirm the decision of the Court of Appeals majority.

At approximately 10:00 a.m. on 13 March 2009, the Reidsville Police Department received an anonymous 911 call about a small white car driving erratically in the vicinity of Way Street in Reidsville, North Carolina. During the call, the caller reported that the vehicle turned off Way Street and into a Food Lion parking lot. Officers Daniel Velasquez and Lynwood Hampshire were dispatched to the area.

Upon their arrival, the officers could not locate a small white car, so they pulled into a parking lot across the street from the Food Lion. At approximately 10:15 a.m., the officers observed a small white car matching the caller's description attempting to leave the Food Lion parking lot. The officers observed as defendant rolled the front pas-senger-side wheel of the vehicle over a curb and into the grass. Defendant then rolled the vehicle backwards off the curb, pulled for-ward to a stop sign, rolled back fifteen to twenty feet, and pulled for-ward again to the stop sign.

Officer Velasquez testified that defendant "made a right-hand turn onto Way Street, except he did a very wide turn and took up both lanes and part of the oncoming land [sic] to get onto Way Street." Officer Velasquez stated that "[a]lmost the entire vehicle" crossed the center line. Officer Hampshire testified that defendant's vehicle "crossed over both of the northbound lanes, crossed over the yellow line, not the complete vehicle, just the driver's side of the vehicle." After crossing the center line, defendant slowly corrected his vehicle and pulled back into the left lane. As defendant passed the location where the officers were parked, the officers pulled out behind defend-ant and stopped his vehicle. Both officers testified that defendant was not wearing his seat belt when he passed them. Nonetheless, Officer Hampshire stated that he decided to stop defendant "[b]ased on his driving" because he observed "signs that [defendant] was impaired or that there was something wrong with him."

After pulling over defendant, the officers approached and asked him several times to roll down his window. The pupils in defendant's "eyes were very constricted, even though it was overcast," and he appeared to have difficulty focusing since he was "[b]linking and just staring off past" Officer Velasquez. After defendant rolled down his window, Officer Hampshire observed that defendant's "actions were very slow" and "[h]is speech was very slurred." The officers also detected the "strong odor of burnt marijuana" coming from defendant's

vehicle. Officer Hampshire asked defendant if he had been smoking marijuana, and defendant responded that "he didn't smoke marijuana." When Officer Hampshire stated that he could smell marijuana, defendant admitted that he had smoked marijuana earlier that day.

Officer Hampshire asked defendant to step out of his vehicle and both officers observed that defendant "was unsteady on his feet." Officer Velasquez steadied defendant and stood next to him so that defendant "wouldn't fall over or cross into traffic." Based upon their observations, the officers believed that defendant was impaired by drugs, not alcohol. Defendant agreed to give a breath sample and blew a 0.00 on an Alco-Sensor test, which Officer Hampshire testified "further provided that the impairment that [he] saw per [defendant's] driving was from the drugs . . . and not any alcohol." Thereafter, defendant consented to a pat down by Officer Hampshire, which did not reveal any evidence. Officer Hampshire then searched defendant's vehicle. During the search, Officer Hampshire found: (1) two marijuana pipes; (2) several lighters; (3) a digital scale; (4) a green bottle cap with a hole cut in it and a metal screen on top, which Officer Hampshire testified is used for smoking narcotics; (5) a pill grinder; (6) several razor blades; (7) a small mirror; (8) rolling papers; (9) a rolling paper machine; and (10) a photograph of defendant smoking what Officer Hampshire believed to be marijuana.

Defendant was arrested and charged with driving while impaired, driving without a seat belt, and possessing drug paraphernalia. On 23 November 2009, defendant filed a motion to suppress in district court, which the district court denied. The district court then found defendant guilty of driving while impaired. The district court sentenced defendant to thirty days in jail, but suspended the sentence and placed defendant on supervised probation for twelve months. Defendant appealed to the Superior Court, Rockingham County.

On 1 July 2010, defendant filed a motion to suppress in superior court pursuant to section 15A-977 of the North Carolina General Statutes. In support of his motion, defendant submitted an affidavit as required by section 15A-977(a). In his affidavit, defendant asserted that the officers did not have probable cause to stop him because he was wearing his seat belt at the time of the stop.

On 18 August 2010, the superior court held a hearing to consider defendant's motion. Defendant did not present any evidence at the hearing. After considering the State's evidence, the superior court concluded that "there [were] discrepancies in the testimony of the

officers," and therefore "it appear[ed] that there [wa]s a question about the basis for the stop." Specifically, the superior court stated that "[o]ne officer said [defendant] was wearing his seat belt. Then he changed it to no, he wasn't wearing his seat belt. The other one said he wasn't wearing his seat belt." The superior court also noted that "[o]ne officer said that the reason that he stopped the—or what he charged the Defendant with was that he wasn't wearing the seat belt, but then he says the only reason that he stopped him was . . . because of the driving as he turned out of the lot." In addition, the superior court stated that "one officer testifie[d] that [defendant] just made a wide turn. The other one says that he went well over the double yellow line." As a result, the superior court orally granted defendant's motion to suppress, stating that "[d]efendant was arrested without probable cause and without warrant."

Thereafter, the superior court entered a written order on 29 September 2010. In its order, the court made findings of fact based in part upon defendant's affidavit. In addition, the court summarized the testimony of the officers and noted "[t]hat there were large discrepancies between the testimony of Officer Valesquez and Officer Hampshire." Specifically, the order stated that "[t]he testimony of Officers Valesquez and Hampshire contained discrepancies as to the movements of the defendant, as described by them, which goes to credibility as to the basis of the stop of the defendant from the Court's point of view." The superior court found that "the real basis for the stop [of defendant's vehicle] was an unsubstantiated report of a vehicle driving carelessly and recklessly." Based upon these findings of fact, the superior court concluded "[t]hat there was insufficient evidence for probable cause to stop and arrest the defendant." The State appealed to the Court of Appeals.

The Court of Appeals reversed and remanded in a divided opinion, concluding that the superior court erred by applying the probable cause standard instead of the reasonable suspicion standard to determine the validity of defendant's traffic stop. *State v. Salinas*, 214 N.C. App. 408, 409-10, 715 S.E.2d 262, 263-64 (2011). The majority noted that the superior court "did not make findings of fact that [would] allow [the Court of Appeals] to apply the correct legal standard on appeal" because the superior court "did *not* adopt as its own findings the substantive testimony of the [o]fficers concerning the facts surrounding the stop," but rather concluded that the officers' testimony contained inconsistencies. *Id.* at 414-15, 715 S.E.2d at 266-67. Therefore, the majority remanded "for the [superior court] to revisit the evidence pursuant to

the reasonable suspicion standard and make its ruling on the constitutionality of the stop, including receiving any additional evidence it chooses to receive in the exercise of its discretion, making any necessary credibility determinations." *Id.* at 413-14, 715 S.E.2d at 266.

The dissent agreed that the superior court applied the wrong legal standard, but disagreed that the case should be remanded for a new suppression hearing. *Id.* at 417-18, 715 S.E.2d at 268 (McCullough, J., dissenting). The dissent argued that the record contained findings of fact to which the Court of Appeals could apply the reasonable suspicion standard and that the superior court's "credibility determinations were superfluous." *Id.* at 417-20, 715 S.E.2d at 268-70. Therefore, the dissent concluded that the Court of Appeals should "review[ ] the record to determine if the actions of the police satisfied the [reasonable suspicion] standard." *Id.* at 417, 715 S.E.2d at 268. Based upon the dissent, the State appealed to this Court as of right pursuant to N.C.G.S. § 7A-30(2).

It is clear that the superior court erred by applying the probable cause standard to review defendant's traffic stop in this case. As we held in *State v. Styles*, "reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected." 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). Ordinarily,

> the scope of appellate review of an order [regarding a motion to suppress] is strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law.

*State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Section 15A-977 of the North Carolina General Statutes sets forth the procedure for considering a motion to suppress in superior court. N.C.G.S. § 15A-977 (2011). Section 15A-977(d) states that "[i]f the motion is not determined summarily the [trial court] must make the determination after a hearing and finding of facts. Testimony at the hearing must be under oath." *Id.* § 15A-977(d). "The [trial court] must set forth in the record [its] findings of fact and conclusions of law." *Id.* § 15A-977(f). "[T]he general rule is that [the trial court] should make findings of fact to show the bases of [its] ruling." *State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980). "If there is a material conflict in the evidence . . . [the trial court] *must* do so in order to resolve the con-

flict." *Id.* However, [i]f there is no material conflict in the evidence . . . it is not error to admit the challenged evidence without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends." *Id.* In these situations, "the necessary findings are implied from the admission of the challenged evidence." *Id.* "Findings and conclusions are required in order that there may be a meaningful appellate review of the decision" on a motion to suppress. *State v. Horner*, 310 N.C. 274, 279, 311 S.E.2d 281, 285 (1984).

As the Court of Appeals majority noted, when the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court. *See State v. McKinney*, 361 N.C. 53, 63-65, 637 S.E.2d 868, 875-76 (2006) (concluding that we "should afford the trial court an opportunity to evaluate the validity of the [search] warrant [that was at issue] using the appropriate legal standard" because the trial court's order contained "limited findings of fact," which made it unclear whether the trial court would have upheld the warrant's validity pursuant to the proper legal standard). Remand is necessary because it is the trial court that "is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred." *Cooke*, 306 N.C. at 134, 291 S.E.2d at 620.

In this case, the superior court did not resolve the issues of fact that arose during the hearing, but rather simply restated the officers' testimony. As a result, the superior court's order does not contain sufficient findings of fact to which this Court can apply the reasonable suspicion standard. Accordingly, this case must be remanded to the superior court so that it may reconsider the evidence pursuant to the reasonable suspicion standard. *See McKinney*, 361 N.C. at 65, 637 S.E.2d at 876.

As guidance on remand, we note that the superior court improperly relied upon the allegations presented in defendant's affidavit when making its findings of fact. Pursuant to section 15A-977 of the North Carolina General Statutes, a motion to suppress "must be accompanied by an affidavit containing facts supporting the motion. The affidavit may be based upon personal knowledge, or upon information and belief, if the source of the information and the basis for the belief are stated." N.C.G.S. § 15A-977(a). But section 15A-977 does

not state that the allegations in the affidavit may be considered as evidence by the trial court when making its findings of fact. To the contrary, we previously have stated that the affidavit required by section 15A-977(a) has a procedural, rather than an evidentiary, function. *See State v. Holloway*, 311 N.C. 573, 576-78, 319 S.E.2d 261, 264 (1984); *State v. Breeden*, 306 N.C. 533, 539, 293 S.E.2d 788, 792 (1982) ("Defendant satisfied his burden of going forward with the evidence by complying with the affidavit requirement of [N.C.]G.S. § 15A-977, at which time the burden shifted to the State to prove by a preponderance of the evidence that the evidence was admissible."), *superseded on other grounds by statute, N.C.G.S. § 8C-1, Rule 404(b) (1988), as recognized in State v. Jeter*, 326 N.C. 457, 459, 389 S.E.2d 805, 806 (1990). As we noted in *Holloway*, the official commentary to section 15A-977 explains that the statute "is structured 'to produce in as many cases as possible a summary granting or denial of the motion to suppress. The defendant must file an affidavit as to the facts with his motion.'" 311 N.C. at 577, 319 S.E.2d at 264 (quoting N.C.G.S. § 15A-977 official cmt.). Read in isolation, this language could suggest that the affidavit has some evidentiary purpose; however, the Court in *Holloway* omitted the following portion of the official commentary, which states:

> [T]he State may file *an answer* denying or admitting facts alleged in the affidavit. If the motion cannot be otherwise disposed of, subsection (d) provides for a hearing at which testimony under oath will be given. Section 15A-976(c) would allow the hearing to be set for the day of the trial if this would be the time most convenient for the witnesses.

N.C.G.S § 15A-977 official cmt. (emphasis added). This portion of the official commentary recognizes that the affidavit contains only allegations, which may or may not be true; but, consistent with the statute itself, it emphasizes the role of testimony at the motion hearing.

Considered as a whole, the text of the statute and the official commentary make clear that the information presented in a section 15A-977(a) affidavit is designed to assist the trial court in determining whether defendant's allegations merit a full suppression hearing. *See id.* § 15A-977(c)(2) (stating that the trial court "may summarily deny the motion to suppress evidence if . . . [t]he affidavit does not as a matter of law support the ground alleged"). The statute does not say that the affidavit may be considered as *evidence* at that hearing. In contrast, the text of section 15A-977(d) states that the facts sup-

porting the trial court's decision to grant or deny a defendant's suppression motion will be established at the suppression hearing on the basis of *"testimony"* given *"under oath." Id.* § 15A-977(d) (emphases added). In this respect, the section 15A-977(a) affidavit functions merely as a procedural prerequisite to secure the summary granting, or avoid the summary denial, of the motion to suppress.

Moreover, this interpretation comports with the views of respected criminal law commentators. According to these commentators, the trial court's "findings [of fact] must be based upon testimony given under oath. Therefore, the defendant cannot rely upon the allegations contained in the motion and affidavit at the hearing. Rather, the defendant must present live evidence that supports his claim of constitutional deprivation." Irving Joyner, *Criminal Procedure in North Carolina* § 8.10[D], at 713 (3d ed. 2005) (footnote omitted); *see also* Maitri Klinkosum, *North Carolina Criminal Defense Motions Manual* ch. 8, pt. III, § B1, at 510 (2008) ("Because the findings of fact must be based on testimony, the defendant cannot rely on the allegations contained in the motion and affidavit at the hearing."). Therefore, we hold that when ruling upon a motion to suppress in a hearing held pursuant to section 15A-977 of the North Carolina General Statutes, the trial court may not rely upon the allegations contained in the defendant's affidavit when making findings of fact.

For the foregoing reasons we modify and affirm the decision of the Court of Appeals majority and remand this case to the Court of Appeals with instructions to further remand this matter to the Superior Court, Rockingham County for additional proceedings consistent with this opinion.

MODIFIED AND AFFIRMED; REMANDED.