TYSON, Judge.
 

 *296
 
 Timothy Allen Ladd, Jr. ("Defendant") appeals from judgment entered after he pled guilty to four counts of secretly using a photographic
 
 *399
 
 device with the intent to capture images of another person pursuant to N.C. Gen.Stat. § 14-202(f). We reverse the trial court's denial of Defendant's motion to suppress and vacate the plea and judgment entered thereon and appealed from.
 

 I. Factual Background
 

 On 20 November 2013, a female employee of the Currituck County Fire/EMS discovered an alarm clock located on the windowsill of the women's bunkroom facing two beds in the room. Two other female employees stated they noticed the clock was also present in the women's bunkroom on 18 November 2013. The clock contained an audio and video recorder, which activated when its sensor picked up a motion or noise. The clock also contained a Subscriber Identity Module (SIM) card.
 

 Defendant was employed by Currituck County Fire/EMS as an EMT from June 2012 to December 2013. Defendant had slept in the women's bunkroom during his overnight shift. After the "alarm clock" was discovered, Chief Robert Glover of Currituck County Fire/EMS conducted a personnel interview with Defendant. Also present were Currituck County Sherriff's Sergeant Jeff Walker and Wesley Liverman, President of the Lower Currituck Volunteer Fire Department.
 

 *297
 
 Defendant consented to a search of his personal laptop and his smartphone, but only to those two items, during the interview. He did not consent to a search of any other personal electronic or data storage devices. After the interview, Sergeant Walker escorted Defendant to Defendant's vehicle to retrieve the laptop, which was located inside a black nylon carrying case.
 

 Sergeant Walker saw and seized a second laptop located on the vehicle's floorboard. Defendant consented to the search of the second laptop. Sergeant Walker and Defendant went to the Currituck County Sheriff's substation for Sergeant Walker to search both laptops and the smartphone.
 

 Sergeant Walker did not find any incriminating evidence on either laptop or on the smartphone. He requested permission from Defendant to take the laptops to the Sheriff's Department main office for a further search of the contents of the computers. Defendant consented and left both laptops contained within the black nylon laptop bag with Sergeant Walker. Sergeant Walker gave the laptops to Sheriff's Detective Ruby Stallings.
 

 Detective Stallings searched the contents of the black nylon laptop bag and discovered several external data storage devices. These included an external hard drive, numerous thumb drives, and micro secure digital cards. Detective Stallings searched the external hard drive and found video images of four or five women undressing or completely naked. The record on appeal is unclear whether any of these recovered images were taken in the EMS women's bunkroom.
 

 Based upon her discovery of these images, Detective Stallings obtained a warrant to search the other external data storage devices located in Defendant's laptop bag. Defendant was charged with seven counts of secretly using a photographic device based upon images recovered after the search of the external data storage devices located within his laptop bag. On 3 February 2014, he was indicted by the Grand Jury on four of those counts.
 

 On 10 March 2014, Defendant moved to suppress the evidence found by Detective Stallings when she viewed the external hard drive. The motion was denied and Defendant conditionally pled guilty, preserving his right to appeal the denial of the motion to suppress. The trial court entered judgment for four counts of secretly using a photographic device. Defendant appeals.
 

 *298
 

 II. Issues
 

 Defendant argues the trial court erred by denying his motion to suppress evidence obtained as a result of non-consensual and unreasonable searches without a valid warrant of both his laptop bag and of the external data storage devices found inside. While the State contends these searches were consensual and constitutional, it also argues this case should be remanded so further evidence can be presented in compliance with
 
 State v. Salinas,
 

 366 N.C. 119
 
 ,
 
 729 S.E.2d 63
 
 (2012). We address both arguments below.
 

 *400
 

 III. Fourth Amendment Analysis
 

 Defendant argues the trial court erred by denying his motion to suppress evidence obtained as a result of non-consensual and unreasonable searches in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States; Article 1, Sections 5, 19, 20, and 23 of the Constitution of North Carolina ; and North Carolina General Statutes §§ 15A-221 -223.
 

 "An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen.Stat. § 15A-979(b) (2015). The fact that Defendant pled guilty to a crime arising from possession of evidence seized during a search does not preclude him from appealing the trial court's motion to suppress.
 
 See
 

 State v. Jordan,
 

 40 N.C.App. 412
 
 , 413,
 
 252 S.E.2d 857
 
 , 858 (1979).
 

 Defendant properly reserved his right to appeal by notifying the State and the trial court of his intention to appeal the denial of the motion to suppress during the pre-trial hearing and during the plea negotiations.
 
 See
 

 State v. McBride,
 

 120 N.C.App. 623
 
 , 625,
 
 463 S.E.2d 403
 
 , 404 (1995),
 
 disc. review allowed in part,
 

 343 N.C. 126
 
 ,
 
 468 S.E.2d 790
 
 ,
 
 aff'd,
 

 344 N.C. 623
 
 ,
 
 476 S.E.2d 106
 
 (1996).
 

 A. Standard of Review
 

 The trial court's findings of fact regarding a motion to suppress are conclusive and binding on appeal if supported by competent evidence.
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). This Court determines whether the trial court's findings of fact support its conclusions of law.
 

 Id.
 

 We review the trial court's conclusions of law on a motion to suppress
 
 de novo.
 

 State v. Edwards,
 

 185 N.C.App. 701
 
 , 702,
 
 649 S.E.2d 646
 
 , 648,
 
 disc. rev. denied,
 

 362 N.C. 89
 
 ,
 
 656 S.E.2d 281
 
 (2007). " 'Under a
 
 *299
 

 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting
 
 In re Appeal of The Greens of Pine Glen Ltd. P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ).
 

 B. Consent
 

 Generally, if an individual consents to a search of himself or of his property, the Fourth Amendment is not implicated.
 
 Schneckloth v. Bustamonte,
 

 412 U.S. 218
 
 , 219,
 
 93 S.Ct. 2041
 
 , 2043-44,
 
 36 L.Ed.2d 854
 
 , 858 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.");
 
 see
 

 State v. Belk,
 

 268 N.C. 320
 
 , 322-23,
 
 150 S.E.2d 481
 
 , 483-84 (1966).
 

 However, a consensual search is limited by and to the scope of the consent given.
 
 See
 

 State v. Jones,
 

 96 N.C.App. 389
 
 , 397,
 
 386 S.E.2d 217
 
 , 222 (1989). The scope of the defendant's consent is "constrained by the bounds of reasonableness: what the reasonable person would expect."
 
 State v. Stone,
 

 362 N.C. 50
 
 , 54,
 
 653 S.E.2d 414
 
 , 418 (2007) ;
 
 see also
 

 Florida v. Jimeno,
 

 500 U.S. 248
 
 , 251,
 
 111 S.Ct. 1801
 
 , 1803,
 
 114 L.Ed.2d 297
 
 , 302 (1991) ( "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?").
 

 During the hearing on the motion to suppress, the parties stipulated to the facts as set out by Defendant's counsel's affidavit, which accompanied Defendant's motion to suppress. In the trial court's order denying the motion, the court stated, "the Court so finds the facts as alleged in the Defendant's affidavit." The court did not consider any other evidence.
 

 The relevant stipulated facts are:
 

 8. Also during the interview, Mr. Ladd was asked for his consent to search his personal laptop and smartphone.
 

 9. Timothy Ladd, Jr. consented
 
 only
 
 to the search of his personal laptop and smartphone.
 

 ....
 

 14. Mr. Ladd consented to the search of the laptop found on the floorboard of his vehicle.
 

 ....
 

 *401
 

 *300
 
 21. That Mr. Ladd consented to further review of the laptops by the Currituck County Sheriff's Department.
 

 ....
 

 23. Upon receiving the laptops for review, Detective Ruby Stallings also searched the contents of the black nylon laptop bag and found numerous external data storage devices....
 

 24.
 
 Without consent
 
 from Mr. Ladd, Detective Ruby Stallings and Deputy Christopher Doxey "decided to view some of the micro SD cards USB ports that were confiscated from Timothy Ladd."
 

 25. The
 
 non-consensual search
 
 of the external data storage devices produced electronic material purported to be evidence of illegal activity.
 

 26. That on November 25, 2013, Detective Ruby Stallings used the material derived from the
 
 non-consensual
 
 search as the evidentiary basis for a warrant to search Mr. Ladd's external data storage devices.
 

 27. That the purported evidence derived from the
 
 non-consensual
 
 search of the external data storage device led to Mr. Ladd being charged with seven (7) counts of felonious secret peeping into a room occupied by another person in the above-referenced file numbers.
 

 (first emphasis in original).
 

 Based on these findings of fact, the court concluded "that the defendant's consent for the search of his property was freely given." The stipulated facts relied on by the trial court clearly distinguish which searches Defendant consented to and which he did not. While Defendant consented to the search of his two laptops and his smartphone, the trial court's findings of fact unambiguously state that all searches beyond those three items were non-consensual.
 

 Defendant contends the trial court's conclusion that he consented to the search was erroneous based on the stipulated facts, which clearly state the search of the external data storage devices was
 
 non-consensual.
 
 Because the trial court's findings of fact must support its conclusions of law, we agree with Defendant.
 
 Cooke,
 

 306 N.C. at 134
 
 ,
 
 291 S.E.2d at 619
 
 .
 

 *301
 
 The State argues that, based on the standard of objective reasonableness, the officers understood Defendant's consent to the search to include both laptops, smartphone, and the external data storage devices. However, the State agreed and stipulated to the following finding of fact: " Timothy Ladd, Jr. consented
 
 only
 
 to the search of his personal laptop and smartphone." (emphasis original).
 

 The stipulated facts contain no reference to the officers' understanding of Defendant's consent. If the State wished to introduce evidence pertaining to the officers' understanding of Defendant's consent, it should have presented or requested the court to hear additional testimony. We are bound by the findings of fact, as stipulated by the parties. We conclude Defendant's consent only extended to his two laptops and his smartphone.
 

 C. Reasonable Expectation of Privacy
 

 Our finding that Defendant did not consent to the search does not complete our analysis. The trial court also concluded Defendant did not have a reasonable expectation of privacy in the external data storage devices.
 

 The Fourth Amendment provides:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 

 U.S. Const. amend. IV.
 

 However, " '[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but
 
 unreasonable
 
 searches and seizures.' "
 
 State v. Scott,
 

 343 N.C. 313
 
 , 328,
 
 471 S.E.2d 605
 
 , 614 (1996) (emphasis supplied) (quoting
 
 Elkins v. United States,
 

 364 U.S. 206
 
 , 222,
 
 80 S.Ct. 1437
 
 , 1446,
 
 4 L.Ed.2d 1669
 
 , 1680 (1960) ). "A search occurs when the government invades reasonable expectations of privacy to obtain information."
 
 State v. Perry,
 
 --- N.C.App. ----, ----,
 
 776 S.E.2d 528
 
 , 536 (2015),
 
 disc. rev. denied and appeal dismissed,
 
 - -- N.C. ----,
 
 781 S.E.2d 622
 
 (2016) ;
 
 see
 

 Katz v.
 

 *402
 

 United States,
 

 389 U.S. 347
 
 , 351-52,
 
 88 S.Ct. 507
 
 , 511,
 
 19 L.Ed.2d 576
 
 , 582 (1967) ("For the Fourth Amendment protects people, not places.... what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.").
 

 *302
 
 To determine whether a defendant possessed a reasonable expectation of privacy, the court must consider whether: "(1) the individual manifested a subjective expectation of privacy in the object of the challenged search [;] and, (2) society is willing to recognize that expectation as reasonable."
 
 Perry,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at 536
 
 (internal quotation marks omitted) (citing
 
 Kyllo v. United States,
 

 533 U.S. 27
 
 , 33,
 
 121 S.Ct. 2038
 
 , 2042-43,
 
 150 L.Ed.2d 94
 
 , 101 (2001) ).
 

 The Supreme Court of the United States has acknowledged that serious privacy concerns arise in the context of searching digital data.
 
 Riley v. California,
 
 573 U.S. ----,
 
 134 S.Ct. 2473
 
 ,
 
 189 L.Ed.2d 430
 
 (2014). In
 
 Riley,
 
 the Court emphasized the "immense storage capacity" of cell phones:
 

 Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy. Most people cannot lug around every piece of mail they have received for the past several months, every picture they have taken, or every book or article they have read-nor would they have any reason to attempt to do so....
 

 But the possible intrusion on privacy is not physically limited in the same way when it comes to cell phones. The current top-selling smart phone has a standard capacity of 16 gigabytes (and is available with up to 64 gigabytes).
 

 Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos.... We expect that the gulf between physical practicability and digital capacity will only continue to widen in the future.
 

 Id.
 

 at ----,
 
 134 S.Ct. at 2489
 
 ,
 
 189 L.Ed.2d at 446-47
 
 (citations omitted). The Court held in
 
 Riley
 
 the officers must generally secure a warrant before searching a cell phone seized incident to arrest.
 

 Id.
 

 at ----,
 
 134 S.Ct. at 2495
 
 ,
 
 189 L.Ed.2d at 451
 
 .
 

 This Court has since relied on
 
 Riley
 
 to support an individual's expectation of privacy in the contents of a Global Positioning System ("GPS") device, which typically contains less personal information than a modern cell phone.
 
 State v. Clyburn,
 
 --- N.C.App. ----, ----,
 
 770 S.E.2d 689
 
 , 694 (2015). Quoting
 
 Riley,
 
 the Court stated:
 

 [C]ourts "generally determine whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' "
 

 *303
 

 Id.
 

 at ----,
 
 770 S.E.2d at 693
 
 (citation omitted). Applying this balancing test, the Court held the defendant's "expectation of privacy in the digital contents of a GPS outweighs the government's interests in officer safety and the destruction of evidence."
 

 Id.
 

 at ----,
 
 770 S.E.2d at 694
 
 .
 

 While the officers had an interest in ensuring their safety when searching the laptop bag and inventorying the laptop bag's contents, the same cannot be said of examining the contents of the external data storage devices found inside of the bag. As the Supreme Court stated in
 
 Riley,
 
 "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer."
 
 Riley,
 
 573 U.S. at ----,
 
 134 S.Ct. at 2485
 
 ,
 
 189 L.Ed.2d at 435
 
 . The external data storage devices found in Defendant's laptop bag posed no safety threat to the officers.
 

 The officers also had no reason to believe the external data storage devices or the information they contained would be destroyed while they pursued a warrant based upon probable cause to search them. The officers had sole custody of these devices and Defendant was not present when these devices were found and searched.
 

 In
 
 Riley,
 
 the Court held:
 

 The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information-
 
 *403
 
 an address, a note, a prescription, a bank statement, a video-that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.
 

 Id.
 

 at ----,
 
 134 S.Ct. at 2489
 
 ,
 
 189 L.Ed.2d at 447
 
 .
 

 The same analysis applies to the search of the digital data on the external data storage devices in this case. Depending on their storage capacities, external data storage devices can often contain as much, if
 
 *304
 
 not more, personal information as a modern cell phone. External hard drives, in particular, can hold the entire contents of an individual's personal computer-all of their photographs, personal information and documents, work documents, tax forms, bank statements, and more. The information contained in these devices can span the course of many years and are capable of containing the " sum of an individual's private life."
 

 Id.
 

 We do not agree with the State's assertion that Defendant had no reasonable expectation of privacy in these devices and the information they contained to permit a search without a warrant.
 

 As in
 
 Clyburn
 
 and
 
 Riley,
 
 the search of the external data storage drives did not further any governmental interest in protecting officer safety or in preventing the destruction of evidence. Defendant's privacy interests in the digital data stored on these storage devices are both reasonable and substantial. The trial court erred by concluding Defendant did not have a reasonable expectation of privacy in the contents of his external data storage devices and by upholding the non-consensual search of the external data storage devices.
 

 IV. State v. Salinas
 

 Finally, the State argues that the North Carolina Supreme Court's decision in
 
 State v. Salinas,
 

 366 N.C. 119
 
 ,
 
 729 S.E.2d 63
 
 (2012) controls the outcome of this case. The Court held, "when ruling upon a motion to suppress in a hearing held pursuant to section 15A-977 of the North Carolina General Statutes, the trial court may not rely upon the allegations contained in the defendant's affidavit when making findings of fact."
 

 Id.
 

 at 126
 
 ,
 
 729 S.E.2d at 68
 
 . The State asserts the trial court's reliance upon the stipulated facts in Defendant's counsel's affidavit directly violates
 
 Salinas.
 

 In
 
 Salinas,
 
 the defendant did not present any evidence during the hearing on his motion to suppress and relied solely on the facts as set out in his affidavit.
 

 Id.
 

 at 121
 
 ,
 
 729 S.E.2d at 65
 
 . The State presented testimony from several officers, which conflicted with the facts set out in the defendant's affidavit, regarding whether the officers had probable cause to make the stop.
 

 Id.
 

 at 121-22
 
 ,
 
 729 S.E.2d at 65
 
 .
 

 Rather than requiring the defendant to present additional testimony, the trial court relied on defendant's affidavit, did not adjudicate the conflicting facts, and granted the defendant's motion to suppress.
 

 Id.
 

 at 122
 
 ,
 
 729 S.E.2d at 65-66
 
 . The Supreme Court stated the trial court "failed to make findings of fact sufficient to allow a reviewing court to apply the correct legal standard."
 

 Id.
 

 at 119-20
 
 ,
 
 729 S.E.2d at 64
 
 .
 

 *305
 
 Here, the facts are easily distinguishable from those before the Court in
 
 Salinas. Salinas
 
 holds that a court cannot rely on a defendant's affidavit in lieu of presenting evidence when the State presents contradicting evidence at a suppression hearing.
 

 Id.
 

 at 124-25
 
 ,
 
 729 S.E.2d at 67
 
 . Unlike in
 
 Salinas,
 
 the parties before us agreed to stipulated facts as the basis for the trial court's findings of fact on the motion to suppress. Based upon this agreement, the court was not presented and did not have to consider any conflicting evidence.
 

 *404
 
 In addition, we find that the facts as stipulated by both parties are sufficient for our
 
 de novo
 
 review of the trial court's conclusions. Neither N.C. Gen.Stat. § 15A-977 nor
 
 Salinas
 
 prevent parties from stipulating to the facts from which the trial court must determine whether the warrantless search was consensual, reasonable, and in the end, constitutional. With the lack of any conflicting evidence for the trial court to adjudicate, the holding in
 
 Salinas
 
 is not applicable here to require remand.
 

 V. Conclusion
 

 The trial court's conclusion of law that Defendant consented to the search of all of his property is not supported by its findings of fact, which clearly state that the search of the contents of Defendant's external data storage devices was non-consensual.
 

 Defendant possessed and retained a reasonable expectation of privacy in the contents of the external data storage devices contained and found inside his laptop bag. The Defendant's privacy interests in the external data storage devices outweigh any safety or inventory interest the officers had in searching the contents of the devices without a warrant.
 

 Without a lawful search, no probable cause supports the later issued search warrant. We reverse the trial court's conclusions of law and denial of Defendant's motion to suppress the evidence found as a result of a non-consensual and unreasonable search of the external data storage devices found in Defendant's laptop bag. Defendant's conditional guilty plea and judgment entered thereon are vacated.
 

 REVERSED AND VACATED.
 

 Judges CALABRIA and STROUD concur.